UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION

UNITED STATES OF AMERICA      )      DOCKET NO. 5:11-CR-32
                              )
        vs.                   )
                              )
CHARLES DAVIS,                )
                              )
            Defendant.        )
_____)


TRANSCRIPT OF INITIAL APPEARANCE
BEFORE THE HONORABLE DAVID CAYER
UNITED STATES MAGISTRATE JUDGE
AUGUST 2, 2011


APPEARANCES:

On Behalf of the Government:

        JENNY SUGAR
        United States Attorney's Office
        227 West Trade Street, Suite 1700
        Charlotte, North Carolina

On Behalf of the Defendant:

        ELIZABETH ANNE BLACKWOOD
        Federal Public Defender's Office
        129 West Trade Street, Suite 300
        Charlotte, North Carolina


Proceedings digitally recorded and transcribed by:


                Cheryl A. Nuccio, RMR-CRR
                  Official Court Reporter
                United States District Court
                 Charlotte, North Carolina

P R O C E E D I N G S

(Transcript of proceedings digitally recorded on August 2, 2011.)

MS. SUGAR:  Your Honor, with me is Kevin Lombardi from the Department of Justice, Tax Division.

THE COURT:  All right.  Mr. Lombardi.

MR. LOMBARDI:  Good morning, Your Honor.

THE COURT:  Good morning.

(Counsel and defendant conferred.)

MS. BLACKWOOD:  Thank you, Your Honor.  I think I do need to make a statement right before we --

THE COURT:  Yes, ma'am.

MS. BLACKWOOD:  -- begin that Mr. Davis wants to advise the court that I am not representing him.  I am, I think, just acting as a legal adviser at the moment.

THE DEFENDANT:  Sui juris.

MS. BLACKWOOD:  Well -- and so I just want to note for the record that I'm not representing him.

MS. SUGAR:  Your Honor, when Mr. Davis was arrested in Puerto Rico, he did not -- he requested that he not have an attorney at the hearing there and did represent himself at the detention hearing and identity hearing in Puerto Rico.  He did state on the record before the court there that he was going to want a lawyer for his case once he moved here.  So we will need to make some sort of understanding of what he wants to do

1  in this case.

2          THE COURT:  All right.  Stand up there, sir.

3          THE DEFENDANT:  Good morning, sir.

4          THE COURT:  Good morning.  Sir, this is your first

5  appearance in United States District Court here in this

6  matter.  The attorney that's standing in with you is

7  Ms. Blackwood with the Federal Defender's Office.  She is just

8  here to stand in with you today.  In a few minutes I'm going

9  to talk to you about what you want to do about a lawyer.  But

10  she is an attorney with the Federal Defender's Office and

11  she's here -- if you have questions or you need any sort of

12  explanations, she's here to assist you.  So that's the

13  capacity she's here in.  Do you understand that?

14          THE DEFENDANT:  Sir, for the record, on the record,

15  I'm here by special appearance and I was attempting to file

16  documents before this hearing yesterday which was denied.  I

17  had a (unintelligible) counsel help me with some documents.

18  He drove in from Tennessee yesterday and he came over to the

19  Mecklenburg County jailhouse to deliver and get me to sign

20  those and have an affidavit sworn so he could file into the

21  record --

22          THE COURT:  All right.  Well, I don't need to get

23  into that right now.  I'm just telling you that's what

24  Ms. Blackwood's role is here today.

25          Now, you do have a right to remain silent and

1  anything you say may be used against you.  Do you understand
2  that right?
3          THE DEFENDANT:  No, sir, I don't.  But she's not
4  representing me today; is that correct?
5          THE COURT:  She is only here if you have a question
6  or you want to talk to her, she's available.  I haven't
7  addressed counsel yet in your case.
8          THE DEFENDANT:  On the record, though, as of now
9  she's not representing me; is that correct?
10          THE COURT:  She has not entered an appearance and
11  she has not been appointed by the court, that's correct.
12          THE DEFENDANT:  Thank you, sir.
13          THE COURT:  Now, you said you don't understand that
14  you have a right to remain silent?
15          THE DEFENDANT:  I don't understand what you were
16  saying about a right.  I know I don't have to speak.
17          THE COURT:  That's what I'm saying.
18          THE DEFENDANT:  Yes, sir.
19          THE COURT:  You don't have to speak; and if you do
20  speak, what you say could be used as evidence against you by
21  the government.
22          THE DEFENDANT:  Does the court acknowledge I'm here
23  on a special appearance?
24          THE COURT:  No.
25          Sir, have you received a copy of the indictment in

1  this case?

2      THE DEFENDANT:  Sir, I did receive that.  It was

3  taken from me.  I have requested copies over three weeks now

4  and have not received them back.  I had legal documents that

5  were with me in Puerto Rico that were supposedly shipped here.

6  They should have been ready when I got here.  I've not been

7  able to see those documents.  It's been about three-and-a-half

8  weeks since I had them.  And I'm having a very difficult time

9  receiving that property, the legal documents I had with me.

10      THE COURT:  Well, there's a copy of the indictment

11  right there on the counsel table.

12      THE DEFENDANT:  Well --

13      THE COURT:  And -- sir, I -- this proceeding is a

14  proceeding where it's important that you listen to what I'm

15  saying, and then I'll be asking you questions as we go

16  forward.  The indictment contains the charges against you --

17      THE DEFENDANT:  Sir, I'm sorry, I'm a little bit

18  hard of hearing.

19      THE COURT:  All right.  The indictment contains the

20  charges against you and I just want to tell you what it is

21  you're charged with and then what the penalties are if you're

22  convicted on these charges.

23      The first five charges are tax violations.  And

24  specifically what they allege are that on the dates that are

25  listed there, you filed with the Internal Revenue Service a

1   report of your adjusted gross income and that you knew that

2   your adjusted gross income was substantially greater than what

3   you reported.  And they listed tax years 1996, '97, '98, '99,

4   and 2000 where they're saying that you did not accurately

5   report your adjusted gross income.

6           And Ms. Sugar or Mr. Lombardi, the penalty on each

7   count is?

8           MS. SUGAR:  Your Honor, the maximum penalty on each

9   count of 7206, Section 1 is three years' imprisonment, a fine

10  of $250,000, or both, and not more than one year of supervised

11  release.

12          THE COURT:  So on those five counts, sir, the

13  maximum penalty per charge is three years.  The maximum fine

14  is $250,000.  Do you understand that?

15          THE DEFENDANT:  No, sir.  I'm without sufficient

16  information to determine that as of yet.  I need more

17  information.

18          THE COURT:  Well, and I'm not asking you what your

19  response to the charge is.  It's not time for that yet.  I'm

20  just advising that's what you're charged with and that's the

21  maximum penalty if you're convicted.  That's what that

22  document says.  Do you understand that?

23          THE DEFENDANT:  No, sir.

24          THE COURT:  How much education do you have, sir?

25          THE DEFENDANT:  College degree, sir.

1      THE COURT:  All right.  Then the next counts are

2  counts six through ten and those are also tax violations.  And

3  what they allege there are that you reported withholding --

4  income tax withholding to the Internal Revenue Service and

5  that the amount of withholding you reported was substantially

6  more than the true amount of withholding.  They're saying you

7  falsely reported the amount of income tax withholding on your

8  tax return.  And there are counts six through ten there.

9  They're charged for tax years 2004, '05, '06, '07, and '08.

10  And then it lists the amount of federal income tax withheld.

11      The maximum penalty on each of those, Ms. Sugar, is?

12      MS. SUGAR:  Is three years' imprisonment, a $250,000

13  fine, or both.

14      THE COURT:  So on each of those counts, sir, it's a

15  maximum three years, maximum fine of $250,000.  And there

16  they're charging you with falsely reporting to the IRS the

17  amount of withholding.  Do you understand that, sir?

18      THE DEFENDANT:  No, sir, I don't.

19      THE COURT:  Can you tell me what it is you don't

20  understand that you'd like me to clarify further.

21      THE DEFENDANT:  Yes, sir.  I'm without sufficient

22  information to make a determination of what that's about.  I

23  need more information.

24      THE COURT:  Well, there's no -- I'm not making a

25  determination and I'm not asking you to.  I'm just saying do

1  you understand what I'm saying?

2          THE DEFENDANT:  I don't.  I don't have sufficient

3  information to understand that.

4          THE COURT:  All right.

5          THE DEFENDANT:  I need more information.

6          THE COURT:  And then the last charge is count

7  eleven.  It charges corruptly obstructing and impeding the

8  Internal Revenue Service.  It alleges that this occurred from

9  March 2006 to the present.  And then it lists several actions

10 that the government says impeded the Internal Revenue Service,

11 and those are filing or causing to be filed fraudulent forms,

12 including 1040 and 1040X forms for 1996 to 2008; filing for

13 bankruptcy to attempt to defeat IRS levies; sending fictitious

14 documents to the Treasury Department and the Internal Revenue

15 Service which purported to discharge debts to the treasury;

16 providing false information in connection with the opening of

17 a bank account, including a taxpayer identification number

18 that had not been issued by the Internal Revenue Service; and

19 concealing assets and income in a nominee bank account.

20          So they're alleging that by those acts, that you

21 obstructed and impeded the Internal Revenue Service.

22          And the penalty there, Ms. Sugar, is?

23          MS. SUGAR:  Three years, $250,000 fine, or both.

24          THE COURT:  So that also carries three years, sir.

25 Maximum fine, $250,000.  Do you understand that?

1          THE DEFENDANT:  No, sir, I don't.

2          THE COURT:  Now, sir, you do have the right to be

3   represented by a lawyer.  And if you can't afford a lawyer,

4   I'll consider appointing one for you.  Do you want to be

5   represented by a lawyer?

6          THE DEFENDANT:  No, I don't.  I request to have

7   (unintelligible) counsel assist.

8          THE COURT:  To have what?

9          THE DEFENDANT:  (Unintelligible) counsel.

10         THE COURT:  I have no idea what that is, sir, but

11  the only thing I can tell you is the only way you're going to

12  be represented in this court is by an attorney who's admitted

13  to practice in this court.  The court's not going to allow

14  anybody else to represent you.

15         THE DEFENDANT:  No, sir, I'm not asking for him to

16  represent me.  I'm asking for assistance of counsel.  Not for

17  him to represent me, but assistance.  In other words, I'm here

18  institutionalized -- excuse me.  I need someone to be on the

19  outside to be able to do my research and file documents for me

20  and communicate legal matters with as assistance.  That's all

21  I'm asking for.

22         THE COURT:  Well, do you want to be represented by a

23  lawyer who is admitted to practice in this court?

24         THE DEFENDANT:  No, sir.

25         THE COURT:  All right.  Then what you're telling me

1  is you want to represent yourself.

2          THE DEFENDANT:  That's correct.

3          THE COURT:  You want to proceed without an attorney.

4          THE DEFENDANT:  That's correct, sir.  And I'd like

5  to --

6          THE COURT:  All right.

7          THE DEFENDANT:  -- request the court's permission to

8  have assistance of counsel.  Not to represent me, but to

9  assist me.

10          THE COURT:  Well, there's some questions I need to

11  ask you if you do not want to be represented by an attorney

12  who would be court appointed and who would -- if you do not

13  want to be represented by an attorney who would be court

14  appointed and who would be a member of this bar.  I want to be

15  sure I understand what you're saying.  Are you telling me you

16  want to hire a lawyer?

17          THE DEFENDANT:  No, sir.

18          THE COURT:  All right.  Well, sir, I need to ask you

19  some questions, then, because if you waive counsel, I have to

20  make a finding that you know what you're doing and that's what

21  these questions are about.

22          You said you have a college degree, sir.

23          THE DEFENDANT:  Yes, sir.

24          THE COURT:  Where did you get your college degree

25  from?

1    THE DEFENDANT:  Southern Illinois University.

2    THE COURT:  All right.  And what was that degree in?

3    THE DEFENDANT:  Business and aviation management.

4    THE COURT:  All right.  And you have done what type

5  of work in your career?

6    THE DEFENDANT:  Commercial airline pilot.

7    THE COURT:  All right.  And today are you under the

8  influence of any alcohol or drugs?

9    THE DEFENDANT:  No, sir.

10    THE COURT:  Do you understand the charges that I've

11  just gone over with you?

12    THE DEFENDANT:  No, I don't understand the charges

13  yet.  I need to do some legal research to uncover what's going

14  on here.  I've been denied that.

15    THE COURT:  Do you understand what I'm saying the

16  penalties are for the offenses that you're charged with?

17    THE DEFENDANT:  What do you mean understand, sir?

18    THE COURT:  Do you understand that on each of these

19  counts, you could face three years in prison if you're

20  convicted?

21    THE DEFENDANT:  Yes, sir.

22    THE COURT:  You do understand that.

23    THE DEFENDANT:  Yes, sir.

24    THE COURT:  All right.  Now, if you proceed without

25  an attorney, if you proceed to represent yourself, there's

1    some things you need to understand.

2            First of all, when you represent yourself, you're

3    held to the same standard that a lawyer would be held to.  So

4    you're going to have attorneys for the government on the other

5    side.  Right now there's an assistant United States attorney

6    there and there's an attorney from the Department of Justice.

7    So you will have attorneys on the other side and you who do

8    not have a legal education will be held to the same standard

9    that they are.  Do you understand that?

10           THE DEFENDANT:  That's provided I have assistance of

11   counsel, I understand that, sir.

12           THE COURT:  Any type of filing of documents with the

13   court, you would have to do that on your own then.  Do you

14   understand that?

15           THE DEFENDANT:  No, sir, I don't.  I don't have the

16   resources or the capability in here financially to do that.  I

17   do have someone on the outside who can handle the filing, the

18   filing fees and the leg work for me and that's what I'm

19   requesting the assistance for.

20           MS. BLACKWOOD:  If I may, Your Honor.

21           THE COURT:  Yes, ma'am.

22           MS. BLACKWOOD:  From my brief conversation with

23   Mr. Davis, it appears that he does have a legal adviser of

24   sorts from Tennessee who tried to -- this legal adviser,

25   Mr. Foust, tried to meet with Mr. Davis, an attorney visit at

1  the jail.  He wasn't allowed to visit with him and can only

2  visit with him now on his visitation days.  So that's once a

3  week.  So I think that's one of Mr. Davis's primary concerns

4  that the person that he's using to advise him on this case

5  can't see him regularly as a regular attorney would.  And I

6  think that's -- if I'm correct, that's one of the main issues

7  that you're having right now.

8            THE DEFENDANT:  Yes.

9            MS. BLACKWOOD:  And that makes it very difficult for

10  him to do what he wants to do which is to proceed --

11            THE COURT:  And I assume this person is not an

12  attorney, then.

13            MS. BLACKWOOD:  No, Your Honor, it's --

14            THE COURT:  And there are different rules for

15  attorneys visiting and nonattorneys visiting.

16            MS. BLACKWOOD:  Yes, Your Honor.

17            THE DEFENDANT:  Only to exchange legal documents,

18  sir, and to strategize the case.

19            THE COURT:  Well, unless that person is a lawyer,

20  the sheriff and the management of the jail, they're not

21  going -- they're not going to allow that person the access and

22  the privileges that a lawyer would have.

23            THE DEFENDANT:  Sir, I --

24            THE COURT:  They're just not going to.

25            THE DEFENDANT:  I believe I'm entitled to assistance

1   of counsel regardless of their bar association.

2          THE COURT:  Well, is this person an attorney?

3          THE DEFENDANT:  No, sir, he's not an attorney.

4          THE COURT:  Well, then, that doesn't come under

5   assistance of counsel.  If it's not a lawyer, it's not

6   counsel.

7          THE DEFENDANT:  I strongly disagree with you on

8   that, sir.  I do believe I'm entitled to have assistance of

9   counsel and it doesn't have to necessarily be an attorney.

10         THE COURT:  Well, to get back to what I was saying,

11  sir, I was attempting to explain to you that you'll be held to

12  the same standard as an attorney.

13         THE DEFENDANT:  Yes, sir.

14         THE COURT:  And if you go to trial in this case, for

15  example, you would have attorneys for the government

16  prosecuting the case.  You would be on your own.  I am

17  confident that a district judge is not going to let somebody

18  who's not a member of the bar of this court participate in

19  your trial.  So you would be sitting there on your own.  And

20  in terms of presenting evidence, cross examining witnesses,

21  making objections, making legal arguments, any of that would

22  be done by attorneys for the government.  You would have to do

23  it on your own.  Do you understand that?

24         THE DEFENDANT:  I accept that, sir.

25         THE COURT:  All right.

1          THE DEFENDANT:  With the provision that I have

2  assistance of counsel.  I can't --

3          THE COURT:  Well, and the way I understand you

4  defining that, sir, you're not going to have that.

5          THE DEFENDANT:  Well, I cannot in an institution

6  locked up 24/7 adequately prepare a defense.  If I'm out I can

7  do that.  On the inside I can't.  And I need someone, a

8  layman, a lay person that can help me with this as far as

9  bringing me my assignments and notarizing documents and

10 searching and doing research for me.

11         THE COURT:  And let me mention something else.  I'll

12 get to you in just a minute, Ms. Sugar.

13         Sir, one of the important aspects of the case is the

14 discovery process where the government provides what evidence

15 they have, and I'm assuming in this case there would be

16 significant documentary evidence or may be evidence that's

17 contained on computers.  They would be providing that evidence

18 to a defense counsel to assess, evaluate and go over with you.

19 They can't provide it to you as they would an attorney.  So

20 that's going to be an issue that's going to have to be

21 resolved is how do you get access to the discovery when you

22 don't have a lawyer.  Do you understand that?

23         THE DEFENDANT:  Doesn't sound fair, sir.  I mean, if

24 I'm here representing myself and they have evidence against

25 me, I should be entitled to all of the --

1           THE COURT:  Well, and I'm not saying they wouldn't
2   provide it.  They have to provide it.  But I'm just saying it
3   makes it a little more difficult.
4           THE DEFENDANT:  I'm willing to take the challenge,
5   sir.
6           THE COURT:  All right.  What did you want to say,
7   Ms. Sugar?
8           MS. SUGAR:  Your Honor, I just wanted to point out
9   that a pro se defendant does not have the right to have a
10  nonlawyer act as his or her assisting counsel, and I can give
11  you a Supreme Court case for that proposition.
12          And furthermore, the defendant has to -- has to --
13  can't vacillate and needs to be clear if he does not want
14  counsel.  And he has said on the record in Puerto Rico that he
15  did want a lawyer.  He's made clear that he does want someone
16  to help him.  In this case I would be very uncomfortable for
17  him to proceed pro se although he does have a right to proceed
18  pro se.  If you do want him to proceed pro se, then we would
19  certainly request that standby counsel be appointed.
20          THE DEFENDANT:  Sir, and I have a right to that --
21  to my representing myself.
22          As far as me requesting an attorney, I told the
23  judge in Puerto Rico I didn't want one.  He insisted upon it.
24  I said I'll consider interviewing one once I got back here.
25  That was my statement to the judge.  Not that I would

1   definitely get one, but I would consider it and search for one
2   that I could rely on and believe in.  I haven't had the
3   opportunity to interview anyone.
4           You said you didn't want to hear about my
5   conditions, but all of my communications was taken from me,
6   all my addresses, my telephone numbers.  I have no way to
7   reach out and touch anyone.  I need someone on the outside to
8   be able to help me with this.  It's not even a local matter.
9   It's a point of communicating with other people in order to
10  bring in evidence --
11          THE COURT:  Well, you can communicate with other
12  people, but what I'm talking about is representation by a
13  lawyer.  I'm not just talking about communicating with people
14  and calling somebody and asking them to run an errand for you.
15  I'm talking about representation by a lawyer.
16          THE DEFENDANT:  Yes, sir, I understand that.  And
17  I'd like to represent myself.  With adequate preparation I
18  feel confident I can do that.  (Unintelligible) the court to
19  allow me to exchange legal documents and extract legal
20  information from my employer and things like that, I feel
21  adequate to do it.
22          THE COURT:  Well, counsel, this is -- this is what
23  I'm hearing from Mr. Davis and then I'll hear from either one
24  of you if you want to be heard.
25          What I understand him to be saying is that he wants

to represent himself.  That he does not want counsel that
would be appointed by the court.  And that what he wants is to
be advised or helped by somebody on the outside who apparently
is not a lawyer.  And that's -- that's what I hear him saying.

And he's acknowledging the penalties for what he's
charged with.  He's not willing to acknowledge that he
understands the charges, although given what his educational
level and employment history is, I think that's an
obstructionist tactic on his part as opposed to a lack of
understanding, but he's saying he doesn't understand the
charges.

So do you want to be heard on that, Ms. Sugar, as
far as the counsel issue?

THE DEFENDANT:  Sir --

THE COURT:  And as I've indicated, Ms. Sugar cites
some case law, and I don't think there's any chance that he's
going to be allowed to have somebody at a trial before a
district judge here involved in his case that's not a lawyer.

THE DEFENDANT:  What was that, sir?

THE COURT:  I said -- the U.S. attorney is citing
some law that says you can't be represented by a nonlawyer and
that's what I told you earlier, that I don't think that's
going to happen.

THE DEFENDANT:  I can cite law that says I do -- I
can have assistance of counsel.

1    THE COURT:  Well, what's your position on the

2    counsel issue, Mrs. Sugar?

3    MS. SUGAR:  Your Honor, I believe the court is going

4    through the correct *Faretta* inquiry.  He has not necessarily

5    answered that he understood all the things he would need to to

6    go forward pro se, but he does have a right to that.  And I

7    would ask at this point that standby counsel be appointed and

8    that perhaps that person could convert to a regular attorney

9    appearance if the defendant later so desired.

10    There is very voluminous discovery in this matter.

11    I would note that after the defendant's detention hearing, he

12    already filed a frivolous document with the district court in

13    this case telling the judge the judge was required to enter a

14    money order against the United States for filing this charge.

15    So I believe that if he's pro se, that we will continue to get

16    such obstructionist filings and I'm seriously concerned about

17    that.  However, we cannot force him to have counsel

18    THE DEFENDANT:  May I see that, please.

19    THE COURT:  What were you going to say,

20    Ms. Blackwood?

21    MS. BLACKWOOD:  Your Honor, I've given him my card.

22    He knows he can call our office at any time if he has a change

23    in circumstance.  I've asked him if he was interested in

24    having some -- us represent him just as a safeguard.  And am I

25    correct I don't believe that's something...

1           THE DEFENDANT:  What was that now?

2           MS. BLACKWOOD:  To have our office appointed as

3   standby counsel.  Is that something you're interested in or --

4   just to have us there in case you need to call us.

5           THE COURT:  Sir, what Ms. Blackwood is talking about

6   is this.  You may waive counsel, but the court may appoint

7   standby counsel.

8           THE DEFENDANT:  What is --

9           THE COURT:  What that means is you're representing

10  yourself, but that attorney is there and available should --

11  should you choose to call on the attorney.  The attorney is a

12  resource to you.  And ultimately if your case goes to trial,

13  you would be representing yourself, but the attorney would be

14  sitting there so that during the trial if you had a question

15  or a concern, you needed something explained to you, the

16  attorney would be available.

17          THE DEFENDANT:  Yes, sir, that's conditionally --

18  can I have a private word with her first?

19          THE COURT:  Sir?

20          MS. BLACKWOOD:  He's --

21          THE COURT:  Yes.

22          (Pause.)

23          MS. BLACKWOOD:  Your Honor, he's comfortable with

24  standby counsel being appointed at this time.

25          THE COURT:  Well, I'm satisfied from the colloquy

I've had with him that he is making a knowing and voluntary
waiver of a right to counsel.

MS. BLACKWOOD: Yes, Your Honor.

THE COURT: But I will appoint -- I'll direct the
federal defender to appoint standby counsel for him.

MS. BLACKWOOD: And I will say as far as a financial
affidavit, which we did not get around to, obviously, I'm not
sure what the government's position is for detention, but if
he is going to be detained, he obviously cannot work. And I
believe most of his assets right now have liens filed against
them and are encumbered in many ways. So I do think that he
is indigent at this time under the requirements of this court.

THE COURT: All right. Did you have an issue about
that, Ms. Sugar?

MS. SUGAR: Your Honor, I believe that most of his
assets are hidden from the government so I don't know whether
they're encumbered at all. I know there are liens filed
against him, but the government is not aware of where his
assets are. He keeps things hidden in trust accounts. We
know that he's moved money offshore based on his job flying
out of the country. We don't know what he was doing with his
money. So he was making six figures a year for many, many
years.

And, yes, we will be seeking detention in this case.
There's already been a detention hearing. However, we think

1  he should fill out a financial affidavit in this matter.

2          THE COURT:  Sir, I know you said you were a pilot.

3  Were you working as a pilot up until the time you were

4  arrested?

5          THE DEFENDANT:  Yes, sir, 27 years at USAirways and

6  seven years with (inaudible) prior to that.

7          THE COURT:  All right.  How much were you making in

8  that job?

9          THE DEFENDANT:  Varies from -- which year

10  particularly?

11          THE COURT:  Your most recent time as a pilot.

12          THE DEFENDANT:  Probably about one thirty, one

13  thirty-five.

14          THE COURT:  And did you own or rent the place where

15  you lived?

16          THE DEFENDANT:  I lost my home in foreclosure.  With

17  the liens against the IRS, they caused me to lose my home.

18          THE COURT:  All right.  So where did you end up

19  living then?

20          THE DEFENDANT:  In hotels.

21          THE COURT:  Do you have any money in the bank or any

22  cash anywhere?

23          THE DEFENDANT:  Repeat that, sir, the latter.

24          THE COURT:  Do you have any money in the bank or do

25  you have any cash anywhere?

1          THE DEFENDANT:  I had about, I think, $600 on me
2     when I was arrested.  I had a checking account -- two checking
3     accounts.
4          THE COURT:  Which -- how much was in the checking
5     accounts?
6          THE DEFENDANT:  It was about -- I don't know, sir.
7     I haven't -- I don't have the records.
8          THE COURT:  Well, I need you to give me an estimate
9     because I need to be sure that you qualify for appointed --
10    even a standby counsel.
11         MS. BLACKWOOD:  Well, Your Honor, if we had filled
12    out a financial affidavit, I was going to ask that it be
13    sealed due to the nature of this case.  I don't -- I'm not
14    that comfortable with him asking -- answering questions about
15    this on the record --
16         THE COURT:  I understand.
17         MS. BLACKWOOD:  -- right now.  And I don't want --
18    I'm just not comfortable with it.  So it's up to Your Honor
19    whether or not we go back and fill out a financial affidavit
20    and ask it to be sealed immediately or I'm not sure what Your
21    Honor --  I'm not sure what Your Honor would choose to do at
22    this moment in this situation.
23         THE COURT:  I think the government was asking for an
24    affidavit.
25         MS. BLACKWOOD:  I believe in situations like this,

1   we do ask the financial affidavit to be sealed.

2           THE COURT:  I understand.

3           MS. BLACKWOOD:  And not accessible by the government

4   because --

5           THE COURT:  I understand that.  I'm just saying they

6   were asking me to --

7           MS. BLACKWOOD:  Right, yes, Your Honor.

8           THE COURT:  -- request one from him.

9           Is that right, Ms. Sugar?

10          MS. SUGAR:  Yes, Your Honor.

11          THE COURT:  All right.  Well, I'll allow him to do

12  it under seal, Ms. Blackwood.

13          THE DEFENDANT:  Sir, I have no idea what the IRS has

14  confiscated since I've been incarcerated.

15          MS. BLACKWOOD:  This is -- he has been in custody

16  for 65 days and has not been able to get in contact with

17  anyone.

18          THE COURT:  All right.

19          MS. BLACKWOOD:  There's an information break down

20  certainly, so I don't know how accurate he can even be at this

21  time.

22          THE COURT:  Well, he -- he will just have to do the

23  best he can with it and I would like to have it and I'll order

24  the clerk to seal it.  So I'll let you get that -- are you

25  involved in these first appearances, Ms. Blackwood?

1              MS. BLACKWOOD:  Yes, Your Honor.

2              THE COURT:  All right.  Well, I'm going to take a

3    break, then, and give you time to go over that with him and

4    then we'll resume.

5              MS. BLACKWOOD:  Okay.  Thank you, Your Honor.

6              THE COURT:  So marshal, we'll take about --

7    hopefully we can do it in about ten minutes.

8              (Brief recess.)

9              THE COURT:  Marshal, go ahead and bring Mr. Davis

10   back out.

11             (Defendant entered the courtroom.)

12             THE COURT:  Was that enough time for you to complete

13   it, Ms. Blackwood?

14             MS. BLACKWOOD:  Thank you, Your Honor.  May I

15   approach?

16             THE COURT:  Yes, ma'am.

17             The court will order the financial affidavit placed

18   under seal.

19             The court will order appointment of standby counsel

20   for him.

21             Mr. Davis, the government's asked that you be held

22   without bond -- the government is asking that you be held

23   without bond, so I'll set a court date for a detention hearing

24   where the court will determine whether you're held without

25   bond or released on conditions.

1          THE DEFENDANT:  Yes, sir.

2          THE COURT:  And your standby counsel will be noticed

3   to be here on that day.

4          What's the court date, Madam Clerk?

5          THE CLERK:  Friday at 10:20.

6          THE COURT:  Friday morning at 10:20.

7          That's all that's going to happen today, sir.

8          (End of proceedings.)

9                                    *****

10  UNITED STATES DISTRICT COURT

11  WESTERN DISTRICT OF NORTH CAROLINA

12  CERTIFICATE OF REPORTER

13

14          I certify that the foregoing transcript is a true

15  and correct transcript from the record of proceedings in the

16  above-entitled matter.

17

18          Dated this 8th day of August 2011.

19

20

21                              s/Cheryl A. Nuccio
                                Cheryl A. Nuccio, RMR-CRR
22                              Official Court Reporter

23

24

25